RECEIVED

APR 15 2016

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* [UNDER SEAL]<br><br>*Plaintiff,*<br>v.<br><br>[UNDER SEAL]<br><br>*Defendants.* | Case: 1:16-cv-00713 Jury Demand<br>Assigned To : Sullivan, Emmet G.<br>Assign. Date : 4/15/2016<br>Description: General Civil (E Deck)<br><br>**Complaint for Violations of the Federal False Claims Act, 31 U.S.C. §§ 3729 et seq.**<br><br>**FILED UNDER SEAL**<br><br>**Jury Trial Demanded** |

**CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT        P. 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA, *ex rel.*
CRYSTAL SCITES
    6632 Walnut Ridge Road
    Dayton, Ohio 45414

    *Plaintiff*,

v.

VIAQUEST, INC.
    525 Metro Place North
    Suite 300
    Dublin, Ohio 43017

    *Defendant*.

**Complaint for Violations of the Federal False Claims Act, 31 U.S.C. §§ 3729 et seq.**

**FILED UNDER SEAL**

**Jury Trial Demanded**

## INTRODUCTION

1. This is a *qui tam* action brought by relator Crystal Scites ("Scites" or "Relator"), on her own behalf and on behalf of the United States of America ("United States") against Defendant ViaQuest, Inc. ("ViaQuest" or "Defendant") to recover damages, penalties, attorneys' fees and other relief owed to the United States and relator for violations of the federal False Claims Act, 31 U.S.C. §§ 3729 et seq., ("FCA" or "False Claims Act").

2. Defendant ViaQuest committed fraud against the United States Department of Health and Human Services ("HHS"), Centers for Medicare and Medicaid Services ("CMS") by (a) knowingly presenting, and causing to be presented false and fraudulent Medicare claims for payment and approval; and (b) knowingly making, using, and causing to be made and used, false records and statements to get false and fraudulent Medicare claims paid and approved by the Government, in violation of 31 U.S.C. §§ 3729(a)(1)(A) and (B).

**CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT    P. 2**

3. In brief, Defendant, a private, for-profit hospice and its corporate parents, defrauded the United States government through a systemic pattern and practice of enrolling and re-certifying non-terminal patients, improperly following hospice certification protocols, and other violations of the Medicare Conditions of Participation.

## PARTIES

4. Relator Scites is a citizen of the United States of America and a resident of Dayton, Ohio. At all material times Scites was a registered nurse licensed in the State of Ohio, License No. 337481, and worked as a Hospice Clinical Care Director in Defendant's Dayton facility. ViaQuest terminated Scites's employment in November 2015.

5. Defendant is a Healthcare Company headquartered in Dublin, Ohio and is a provider of home health services, hospice, mental health, and residential services.

6. ViaQuest operates hospice facilities in Ohio, Indiana, and Pennsylvania.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over the claims alleged in this Complaint under 28 U.S.C. §§ 1331 and § 1345, and 31 U.S.C. § 3732(a).

8. This court has the authority to exercise specific jurisdiction over defendant under 31 U.S.C. § 3732 because defendant engages in systematic and continuous contacts with the District of Columbia by submitting payment claims to the United States Department of Health and Human Services headquartered at 200 Independence Avenue, S.W. Washington, District of Columbia 20201. In addition, 31 U.S.C. § 3732(a) specifically provides for nationwide service of process anywhere the Defendant can be found, resides, transacts business or where any act proscribed by § 3729 occurs.

9. The District Court for the District of Columbia is the proper venue under 28 U.S.C. §§ 1391(b) because the events giving rise to this complaint occurred in this judicial district, and the defendant transacts business within this District.

## MEDICARE FRAUD ALLEGATIONS

### I. Introduction

10. The Centers for Medicare & Medicaid Services (CMS) designed the Hospice Care Program to support terminally ill patients.

11. CMS established four designations of care for the Hospice Care Program: routine home care, continuous home care, general inpatient care, and respite care.

12. ViaQuest provides routine home care, continuous home care, and respite care to its patients.

13. The majority of ViaQuest's patients receive routine home care benefits.

14. Patients in the Routine Home Care designation receive nursing and health aide services at their home.

15. CMS publishes an annual report on payment rates which describes the general daily rates a hospice facility can bill Medicare for each hospice beneficiary. The CMS national billing rates are described below:

    a. The daily rate for Routine Home Care is $121.98;

    b. The daily rate for Continuous Care is $711.92;

    c. The daily rate for Inpatient Respiratory Care is $126.18;

    d. The daily rate for General Inpatient Care is $347.32.

16. All of the patients identified in this complaint which ViaQuest fraudulently admits and re-certifies as hospice eligible are routine home care beneficiaries.

17. ViaQuest fraudulently bills Medicare an estimate of $121.98 per day for each patient identified in this complaint.

## II. ViaQuest Fraudulently Admits New Patients

18. In order to admit a new patient, ViaQuest must certify that the patient is terminally ill. (42 CFR § 418.22). To certify a patient as terminally ill, a hospice physician or hospice nurse practitioner must:

    a. Certify that the patient's prognoses is 6 months or less;

    b. Provide with this certification clinical information and documentation that support the patient's diagnosis; and

    c. Include a brief narrative supporting the findings that the beneficiary's prognoses is 6 months or less (42 CFR § 418.22(b)(1) and (2).

19. ViaQuest's patient population regularly exceeds the 6-month prognosis because ViaQuest fraudulently certifies incoming hospice patients as terminally ill.

### A. Examples of Patients Admitted with Non-Fatal Illnesses

20. ViaQuest frequently admits hospice patients with non-fatal illnesses.

21. Patient R.D. was originally admitted to hospice with the diagnosis of pancreatic cancer. After admitting the patient, Viaquest changed his terminal diagnosis to Alzheimer's Disease. The patient is currently in his 20th benefit period. The records show that this patient was diagnosed with a pancreatic tumor but not pancreatic cancer.

22. Patient A.B. was originally admitted to hospice with breast cancer. After admitting this patient, ViaQuest changed the patient's terminal diagnosis to Alzheimer's Disease. This patient is currently in her 14th hospice benefit period.

23. Patient J.A. was originally admitted to hospice for Parkinson's Disease. The patient is currently in her 14th benefit period. This patient never met the criteria for a terminal diagnosis because the patient was not initially certified as terminally ill.

24. Patient T.S. was on hospice for Alzheimer's Disease but the patient's condition was never terminal. Scites was this patient's RN Case Manager and frequently asked ViaQuest's management to discharge the patient. ViaQuest refused to discharge the patient.

25. Patient R.M. is currently a hospice patient with the diagnosis of chronic obstructive pulmonary disease (COPD). ViaQuest received this patient through a referral from ViaQuest's home health division. This patient does not qualify for hospice because the patient is not oxygen dependent which is a requirement to be diagnosed with COPD.

26. Patient M.B. was admitted into hospice and diagnosed with heart failure. ViaQuest eventually had to discharge this patient because the initial diagnosis was inappropriate.

### B. ViaQuest Relies on Unethical Relationships to Procure Patients

27. In addition to its hospice facilities, ViaQuest also runs a home health program in Dayton, Ohio, and ViaQuest uses the home health program to obtain patient referrals for its hospice facilities.

28. After a patient is referred from ViaQuest's home health program, a Viaquest medical professional fraudulently certifies the patient as terminally ill even when the patient is not.

29. Amy LNU, a clinical liaison at ViaQuest obtains a salary bonus for admitting patients into the hospice facility, and frequently lobbied to admit more patients.

30. In September 2015, ViaQuest received a referral for hospice care from the home health program.

31. Patient E.G. came to ViaQuest with a prior medical assessment.

32. The prior doctor's assessment specified that the patient had dementia, but the patient did not meet the hospice guideline requirements for admission as some stages of dementia do not qualify for hospice care.

33. The Vice President of ViaQuest, Paula Borne, insisted on performing a repeat assessment in order to then ask a ViaQuest doctor certify the patient as hospice-eligible.

34. In e-mail below, Amy LNU informed relator that "Dr. Ferguson will help with the diagnosis." Meaning that Dr. Ferguson would certify a patient as a hospice-eligible patient even though this patient does not qualify for hospice care:



### C. ViaQuest Performs Preliminary Patient Assessments Without Consulting with a Physician

35. ViaQuest 's management told relator to assess patients illegally before admission.

36. A hospice can only admit a new patient with the recommendation of the hospice's medical director, or the patient's attending physician. (42 CFR § 418.25(a).)

37. On various occasions, ViaQuest asked Scites to perform assessments for potential hospice patients with no prior physician's recommendation, or evaluation.

38. ViaQuest often requests registered nurses to perform medical assessments first and ViaQuest will later contact a physician for an assessment order.

39. The physician will ultimately issue an assessment order, which certifies ineligible patients for hospice.

### III. ViaQuest Fraudulently Re-certifies Patients for Hospice Care

40. After a a medical professional certifies a patient as terminally ill, the patient or representative must elect to receive hospice care in order to join the hospice facility. The first election period a patient or representative can elect is for 90 days. The beneficiary might elect to receive hospice care initially for two 90-day periods (180 days), and an unlimited number of 60 day periods thereafter. The hospice needs to re-certify that a patient is terminally ill for each benefit period. (42 CFR § 418.22(a) and (b).)

41. The National Average patient length in hospice care in the United States was 71 days in 2014.[1]

42. In October 2015, the average length of stay in hospice care for the ViaQuest Dayton hospice facility was 400 days.

43. In October 2015, 14 out of 19 patients in the ViaQuest Dayton hospice facility exceeded the initial 180 day period. Relator provides the following list of patients in the ViaQuest Dayton facility:

---

    a. Patient J.A.    Benefit Period # 14 (870 days),
    b. Patient A.B.    Benefit Period # 14 (870 days),
    c. Patient G.B.    Benefit Period # 2 (150 days),
    d. Patient K.C.    Benefit Period # 6 (390 days),
    e. Patient H.C.    Benefit Period # 14 (870 days),
    f. Patient R.D.    Benefit Period # 20 (1,232 days),
    g. Patient L. F.    Benefit Period # 12 (750 days),
    h. Patient I.G.    Benefit Period # 6 (390 days),
    i. Patient M.H.    Benefit Period # 6 (390 days),
    j. Patient D.K.    Benefit Period # 7 (450 days),
    k. Patient P.M.    Benefit Period # 2 (150 days),
    l. Patient R.M.    Benefit Period # 10 (630 days),
    m. Patient G.P.    Benefit Period # 11 (690 days),
    n. Patient A.R.    Benefit Period # 2 (150 days),
    o. Patient B.S.    Benefit Period # 1 (90 days),
    p. Patient T.S.    Benefit Period # 10 (630 days),
    q. Patient J.S.    Benefit Period # 18 (1,110 days),
    r. Patient H.W.    Benefit Period # 12 (750 days),
    s. Patient E.W.    Benefit Period # 2 (150 days),
    t. Patient C.Y.    Benefit Period # 1 (90 days),

44. On various occasions, Scites tried to persuade ViaQuest's management to discharge patients that had been in hospice care for more than 6 months, and were not properly re-certified for hospice care.

45. ViaQuest's management told Scites to hold off on discharging patients who were not properly certified to remain in hospice care in order to continue billing Medicare.

46. As of October 2015, there were 19 patients in the ViaQuest Dayton hospice facility. Coupled with the other claims submitted to Medicare and assuming ViaQuest, a nation-wide company, engages in similar conduct at other locations damages are expected to be in the tens of millions of dollars.

## IV.   Scites is Promoted to Clinical Care Director

47. On June 2015, Scites became the Clinical Care Director of the ViaQuest Dayton hospice facility.

48. As the Clinical Care Director, Scites was in charge of supervising managers, nurses' aids, and social workers.

49. As Clinical Care Director, Scites became began to question the methods ViaQuest used to admit hospice patients.

50. When Scites became the Clinical Care Director, she started the process of discharging patients from the ViaQuest Dayton hospice facility who had been on hospice care for years.

51. ViaQuest's management objected to Scites' efforts to discharge long-term patients who did not qualify for hospice care.

52. On various occasions, Scites refused to comply with ViaQuest's management instructions to perform medical assessments to potential hospice patients for whom no prior doctor's evaluation had been issued.

### V. ViaQuest Terminates Scites after she Refuses to Admit Ineligible Patients

53. In July 2015, ViaQuest hired Paula Borne as the Vice President of hospice care for all of ViaQuest's facilities.

54. Borne instructed Scites to lead the second assessment in order to admit Patient E.G. into hospice care.

55. Borne insisted on admitting patient E.G. , and and Scites refused to comply with Borne's instructions to fraudulently admit the patient.

56. Borne wanted to admit this patient E.G. in order to increase the revenue of the Dayton hospice facility.

57. ViaQuest's management established a specific census requirement that Borne had to fulfil in her role as Vice President.

58. Borne felt obligated to recruit more hospice patients.

59. On November 13, 2015, ViaQuest terminated Scites' employment.

60. Scites' removal letter states that ViaQest is terminating her for not following her supervisor's instructions to perform a medical assessment for a potential hospice patient (patient E.G.) even though E.G. was not eligible.

61. The stated basis for Scites' termination is pretext. Scites was in fact unlawfully terminated for attempting to stop Defendant from committing fraud and for refusing to participate in Defendant's fraudulent acts.

## COUNT I
### Federal False Claims Act Claim pursuant to 31 U.S.C. § 3729(a)(1)(A)

62. Relator reasserts and incorporates by reference all paragraphs set forth above as if restated herein.

63. The False Claims Act imposes liability on any person who knowingly presents or causes to be presented a false or fraudulent claim for payment or approval. 31 U.S.C. § 3729(a)(1)(A).

64. Pursuant to 42 C.F.R § 418 generally and specifically sections 418.1; 418.20; 418.22; 418.25; 418.50; 418.54; 418.74; 418.200; 418.202; 418.301-311, ViaQuest must meet requirements for certification of patients for hospice care to qualify for payment from the federal government. Specifically, § 418.22 requires a medical certification of terminal illness by a physician and that the certification be accompanied by documentation to support a six-month prognosis.

65. Relator has first-hand knowledge of numerous patients that ViaQuest admitted to hospice care who did not meet the criteria for hospice admission because they had not reached the end-stage of their illness.

66. In addition to, and often in conjuction with its practice of admitting and billing the United States of America for hospice services for patients who do not qualify, ViaQuest routinely re-certifies patients unqualified for hospice care after their initial 90-day benefit period ends.

67. For each of the representative patients described above, ViaQuest submitted claims and received payment from the United States government through Medicare for hospice services provided to each patient despite the fact that the patients did not meet the requirements for hospice admission.

68. The United States of America has been damaged by all of the aforementioned misrepresentations and failures to comply with the requisite laws and regulations in an as of yet undetermined amount.

69. With respect to the aforementioned misrepresentations and failures to comply, ViaQuest knowingly made false claims to officials of the United States government for the purpose of obtaining compensation.

70. ViaQuest's other facilities also follow the same practices of intentional non-compliance and fraudulent billing.

71. ViaQuest's management is aware of the non-compliant practices and have not taken action to accomplish compliance.

## COUNT II
### Federal False Claims Act Claim pursuant to 31 U.S.C. § 3729(a)(1)(B)

72. Relator reasserts and incorporates by reference all paragraphs set forth above as if restated herein.

73. The False Claims Act imposes liability on any person who knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim. 31 U.S.C. § 3729(a)(1)(B).

74. Defendant knowingly made or caused to be made a false record or statement material to a false claim when it submitted claims to Medicare for patients who were not properly certified for hospice care.

75. Defendant knowingly made or caused to be made a false record or statement material to a false claim when it submitted claims to Medicare for patients who were not properly re-certified to remain in hospice care.

76. The result of Defendant's actions has led the Government to pay for medically unnecessary services, for which Defendant received payments from Medicare in an as of yet undetermined amount.

77. The United States of America has been damaged by all of the aforementioned misrepresentations and failures to comply with requisite laws and regulations in an as of yet undetermined amount.

## COUNT III
### Retaliation in Violation of the False Claims Act, 31 U.S.C. § 3730(h)

78. Relator reasserts and incorporates by reference all paragraphs set forth above as if restated herein.

79. Relator was an "employee" and defendant was an employer as defined by the False Claims Act.

80. If an employee takes actions in furtherance of a qui tam action, or in an effort to stop violations of the False Claims Act, and the employer chooses to retaliate against the employee because of such acts, the employer violates the FCA.

81. If an employer discharges, demotes, suspends, threatens, harasses, or in any other manner discriminates against an employee because that employee takes actions in furtherance of a qui tam action, or in an effort to stop violations of the False Claims Act, the employer violates the FCA.

82. On numerous occasions, Scites engaged in protected activity when she: (i) complained to ViaQuest's management for ViaQuest's fraudulent hospice admissions' scheme; and (ii) refused to comply with ViaQuest's management instructions to fraudulently assess new patients without a prior medical professional's assessment.

83. When defendant became aware of Scites' complaints, defendant terminated Scites.

84. Defendant retaliated against Scites when it terminated Scites shortly after Scites engaged in protected conduct.

85. To redress harms she suffered as a result of the acts and conduct of defendant in violation of 31 U.S.C. § 3730(h), Scites is entitled to damages including compensation for any special damages sustained as a result of employer's actions, including emotional distress and any other damages available by law including litigation costs and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, the United States is entitled to damages from ViaQues in accordance with the provisions of 31 U.S.C. §§ 3729-3733, and relator requests that judgment be entered against Defendant, ordering that:

    a. Defendant cease and desist from violating the False Claims Act, 31 U.S.C. § 3729 *et seq.;*

    b. Defendant pays an amount equal to three times the amount of damages the United States has sustained because of Defendant's actions, plus a civil penalty against Defendant of not less than $5,000 and not more than $11,000 for each violation of 31

U.S.C. § 3729;

    c. Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

    d. Relator be awarded all costs of this action, including attorneys' fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d);

    e. Relator be awarded front pay, double back pay, and compensatory and other damages awardable pursuant to 31 U.S.C. § 3730(h);

    f. The United States and relator be granted all such other relief as the Court deems just and proper.

## JURY DEMAND

    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, co-relators hereby demand a jury trial.

Dated: April 15, 2016

Respectfully Submitted,

/s/

David Scher
R. Scott Oswald
*Counsel for Relator*
The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
(202) 261-2803
(202) 261-2835 (facsimile)
dscher@employmentlawgroup.com
soswald@employmentlawgroup.com
